Chesapeake & Ohio Ry. Co. v. Nipp's Adm'x..

CASE 7.—ACTION BY GEORGE NIPP'S ADMINISTRATRIX
AGAINST THE CHESAPEAKE & OHIO RY. CO., FOR
DAMAGES FOR CAUSING THE DEATH OF PLAINT-
IFF'S INTESTATE.—March 13.

# Chesapeake & Ohio Ry. Co. v. Nipp's Adm'x

| 125 | 49 |
| 134 | 548 |

Appeal from Carter Circuit Court.

S. G. KINNER, Circuit Judge.

Judgment for plaintiff.   Defendant appeals.   Reversed.

1. Railroads—Statutory Signals—Evidence—Weight—Question for
   Jury.—On the question of negligence in the failure of an
   engineer to give the statutory signals at a railroad crossing, the
   rule in this State is that where witnesses say positively
   vol. 125—4

that the signal was given, and other witnesses, who were in a position to know whether it was or not, say they did not hear it, the question will be left to the jury, and it is for the jury to consider the weight and sufficiency of the evidence.

2. Foot-path Crossings—Standing Therein—Trespasser—One standing in a foot-path crossing over a railroad track, near a rock crusher, though such path has been so used for a long period, is a trespasser, and the engineer on the train owes him no lookout duty, and is only required to exercise ordinary care to avoid injuring him after his position of peril is actually discovered.

3. Anticipating Tresspasser—Rule Applying—Remote Localities— The rule requiring railroad companies to anticipate the presence of persons on its tracks, applies only to cities and thickly populated communities, and cannot be extended to sparsely settled regions, although foot-paths crossing the tracks may be used by a large number of persons daily, and such use does not impose on the company any lookout duty or warning, or affect the speed of the train.

JOHN T. SHELBY for appellant.

E. B. WILHOIT of counsel.

### PROPOSITIONS AND AUTHORITIES.

1. There was a clear variance between the plaintiff's case as alleged in the pleadings and as developed in the evidence.

2. The fact that persons make an unauthorized use of a portion of a railroad right of way, with the knowledge or acquiescence of the company, does not constitute them licensees, nor impose upon the company the duty of looking out for, or guarding against, their presence upon the track. (Brown's Adm'r v. L. & N. R. R. Co., 97 Ky., 228; Embry v. L. & N. R. R. Co., 18 Ky. Law Rep., 434; Gregory v. L. & N. R. R. Co., 25 Id., 1988, 79 S. W., 238; C. & O. Ry. Co. v. See's Adm'r, Id., 1997, 79 S. W., 253-4; Beiser v. C. & O. Ry. Co., 92 S. W., 928; C. & O. Ry. Co. v. Barbour's Adm'r, 93 Id., 24.)

3. No one can complain of the failure by another to perform a duty except one to whom such duty is owing. A railroad company owes no duty to a trespasser to give notice of the approach of a train; therefore, a trespasser cannot complain of a failure to give signals. (21 Am. & Eng. Ency. of Law, 2nd Ed., 470; Shearman and Redfield on Neg., sec. 8; Savings Bank v. Ward, 100 U. S., 202; Shackelford's Adm'r v. L. & N. R. R. Co., 84 Ky.,

Chesapeake & Ohio Ry. Co. v. Nipp's Adm'x.

47; Davis' Adm'r v. C. & O. Ry. Co., 116 Id., 155-6; L. & N. R. R.
Co. v. Redmon, 91 S. W., 725-6.)

4.  The case of Cahill v. Cincinnati, &c., Ry. Co., 92 Ky., 350,
has no application to the facts of this case.

5.  Where there is positive, affirmative testimony that signals
were given, the mere fact that other witnesses did not hear the
signals does not make a case of conflict of evidence, unless such
negative witnesses were looking, watching or listening for the
signals, or were in a position where they could not have failed
to hear them if they had been given.  Upon such a state of evi-
dence the party upon whom rests the burden of proof to show
the failure to signal has failed to make out his case and there
is no question for submission to the jury. · (B. & O. R. R. Co. v.
Horn, 54 Fed., 304; Culane v. N. Y. C. & H. R. R. R. Co., 60
N. Y., 137; Shufelt v. F. & P. M. R. Co., 96 Mich., 327; Clark v.
N. Y. C. R. Co., 40 N. Y. Supp., 730; B. & O. R. R. Co. v. Baldwin,
144 Fed., 54-5.)

6.  The plaintiff's testimony showed that the deceased was
guilty of such contributory negligence as to defeat the action.
(Garlich v. N. P. Ry. Co., 131 Fed., 839; K. C. &c., Ry. Co. v.
Cook, 66 Id., 122.)

PROCTOR K. MALIN, ARMSTRONG & WOODS and J. A.
SCOTT, attorneys for appellee.

(No brief in the record for appellee.)

OPINION OF THE COURT BY JOHN D. CARROLL, COM-
MISSIONER—Reversing.

In October, 1901, George Nipp was struck and in-
stantly killed by one of appellant's trains at a place
known as the "Highland Stone Crusher," in Carter
county.  A trial in the circuit court resulted in a
verdict and judgment in favor of the appellee for
$1,000, from which this appeal is prosecuted.

The stone crusher is situated about 20 feet south of
the main track on the inside of a sharp curve in the
track east of Olive Hill and between that town and
the summit of Corey Hill.  There is a heavy down-
grade from the top of Corey Hill by the rock crusher

and extending to Olive Hill. There is a public road
on the north side of the railroad that runs parallel
with it for some distance, and at a point some 445 feet
east of the crusher it crosses the railroad track. The
crossing whistling post for trains going west is some
distance east of the crossing. Close to the crusher,
on the south side of the track, a store is located, and
the evidence conduces to show that there was a foot-
path leading from the store, across the railroad track,
to the county road on the north. The number of per-
sons who used this footpath in crossing the track is
variously estimated by witnesses at from 10 to 50 a
day. On the day he was killed, the decedent went to
the store and inquired for one Jarvis. Upon ascer-
taining that he was at work in the crusher, he went to
the crusher and talked to Jarvis a few minutes, re-
mained around the crusher for a short time waiting
to see Jarvis further, and at the time of the accident
was standing on the main track looking at the crusher.
The train that struck appellee was going west at a
speed of about 30 miles an hour. The engineer testi-
fies that he did not see Nipp until the engine was
within 50 feet of him, and that he immediately
sounded the alarm whistle and applied the air brakes,
but could not stop the train, or appreciably lessen its
speed, before Nipp was struck. The engineer's posi-
tion placed him on the outside of the curve, and thus
prevented him from seeing Nipp until within a few
feet of him.

Appellee rested their case upon the failure of the
engineer to whistle for the road crossing, and upon
this issue alone it was submitted to the jury; the
court instructing the jury, in substance, that it was
the duty of the servants of appellant in charge of the
train to give warning of its approach to the public

crossing east of the rock crusher by ringing the bell or sounding the whistle, and that, if the death of Nipp was caused by its negligence in this respect, they should find for appellee. They were further instructed that it was the duty of Nipp to exercise ordinary care for his own safety, and that if he knew, or by the exercise of ordinary care could have known, of the approach of the train in time to have prevented it from striking him, and negligently failed to avoid the injury, there could be no recovery. Other instructions were given, defining the measure of damages and the meaning of the word "care." Appellant asked the court to say to the jury that it was not liable in damages, unless the peril of Nipp was actually discovered in time to enable the engineer by the use of ordinary care to avoid striking him.

It is also earnestly insisted that sufficient evidence was not introduced by appellee to show a failure upon the part of the persons in charge of the train to give warning of its approach to the county road crossing, and that the court erred in instructing the jury upon this issue. The evidence touching this point is very conflicting. The weight of the affirmative evidence supports the theory that the usual and customary signals were given. On the other hand, a number of witnesses, who were in a position to hear the whistle if it had been sounded, testified that no whistle was sounded, or, if it was, that they did not hear it, although they could have heard the whistle if it had been sounded. In some jurisdictions it is held that affirmative evidence that a warning was given must be accepted as proof of that fact, although an equal or greater number of witnesses who were not listening especially for it testified that they did not hear the warning. Horn v. B. & O. Ry. Co., 54 Fed. 304, 4

C. C. A. 346; Culhain v. N. Y., C. & H. R. R. Co.,
60 N. Y. 137; Shufelt v. F. & P. M. Ry. Co., 96 Mich.
327, 55 N. W. 1013; B. & O. R. Co. v. Baldwin, 144
Fed. 54, 75 C. C. A. 211. But this rule of evidence
does not obtain in this State. Where witnesses say
positively that a warning was given, and other wit-
nesses who were in a position to know whether it was
or not say they did not hear it, the question will be
left to the jury. It is for them to consider the weight
and sufficiency of the evidence, and the mere fact that
affirmative evidence may be entitled to more weight
than negative evidence will not warrant the court in
refusing to submit to the jury the issue of fact raised
by conflicting testimony of this character. It would
be a radical innovation upon the prevailing practice
in this State, and an unwarranted invasion of the
right of trial by jury, to hold that the court, as a mat-
ter of law, should say that the evidence of persons
who testified that, although nearby, they did not hear
any whistle sounded, was not in conflict with the testi-
mony of others who said positively that the proper
signals were given; it being entirely competent to
show, by persons who had an opportunity of knowing
whether a whistle was sounded or not, that it was not
sounded. The question of the effect and weight of
their evidence is for the jury. The jury might be
disposed to attach more importance to a statement
like this made by a disinterested person than they
would to an affirmative statement made by a party in
interest. When evidence is competent to go to the
jury, it is for them, and not the court, to say what
weight shall be attached to it.

The main issue we are called on to consider may
be stated thus: For the appellant it is contended that
Nipp was a trespasser, and that it owed him no duty

of lookout or warning until his presence was actually discovered on the track; that, although it may have failed to whistle for the crossing, Nipp, being a trespasser, could not complain of its negligence, if any, in this respect. For appellee, in the absence of a brief, it may be said to be his position that Nipp, at the time he was struck, was on or near the footpath that had been used with the knowledge and consent of the company for so long a period of time, and by so many persons, as to give the public the right to use it as a matter of right, and imposed upon the railroad company the duty of giving warning of the approach of trains to persons who might be on or crossing the track at this point, and that, in failing to give such warning, or to give the statutory warning of its approach to the public crossing near this footpath, it committed a breach of duty it owed to Nipp, and therefore must respond in damages to his estate for the destruction of his life; that it was its statutory duty to whistle or ring the bell for the county road crossing, and that persons using the footpath had the right to rely upon the performance of this duty, and, if it had discharged its duty in either of these respects, Nipp would have been warned of the approach of the train in time to have avoided being struck by it.

From a careful examination of the evidence, we have reached the conclusion that Nipp, at the time he was struck, was a trespasser upon the track, and therefore the only duty that appellant owed him was to exercise ordinary care to avoid injury to him after his position of peril was actually discovered. Smith's Admr. v. Illinois Central R. Co., 90 S. W. 254, 28 Ky. Law Rep. 723; L., H. & St. L. R. Co. v. Jolly's Admr., 90 S. W. 977, 28 Ky. Law Rep. 989; C. & O. Ry. Co. v. Barbour, 93 S. W. 24, 29 Ky. Law Rep. 339. There

is some evidence that the persons in charge of the
engine could have seen Nipp at a point 300 or 400 feet
distant from where he was struck; but in view of the
fact that he was a trespasser, and the company did not
owe him any lookout duty, or any duty until his pres-
ence was actually discovered, it is totally immaterial
how far the engineer might have seen him if he had
been keeping a sharp lookout. The only question is:
When did he discover his presence on the track, and
did he, after making this discovery, exercise ordinary
care to avoid injury to him? The only evidence upon
this point is that of the engineer, who testifies that he
did not discover or see Nipp until it was too late to
stop the train, or appreciably lessen its speed; that
all he could do was to apply the emergency brake and
sound the alarm whistle, and both of these things he
immediately did. The fireman testifies that he did
not see Nipp at all; that, as the train was approach-
ing the rock crusher, he was looking back towards the
rear end of the train in the performance of the duties
imposed upon him by the rules of the company.

Considering the instructions given by the trial
judge, he was evidently of the opinion that there was
sufficient evidence of such long continued use of the
footpath by the public as to impose upon appellant
the duty of giving warning of the approach of its
trains to this point, and that in crossing the track
Nipp was a licensee, and not a trespasser. This ques-
tion we will proceed to examine. The evidence dis-
closes that there is no station at the point where the
rock crusher was located, and that trains only stopped
there under orders. Nor does it appear that there
were any houses or other buildings nearby, except a
store, and that persons in the neighborhood trading
at the store used this footpath in going from the pub-

lic road to the store; it being also used by the laborers
engaged in working at the crusher.   How long this
use of the footpath had been continued the evidence
does not satisfactorily disclose, nor is it clear how
many persons cross the track at this point each day.
The witnesses estimated the number at from 10 to 50.
The larger number of these used it when the stone
crusher was in operation, being engaged as laborers,
and in going to and from their work crossed the track
at this point.   It has been ruled by this court that
where the public generally, with the knowledge and
acquiescence of the railroad company, have continu-
ally used the tracks for a long period of time, the
presence of persons on the track at the point where it
is so used must be anticipated by the company in
running its trains, and it owes to persons thus habit-
ually using its right of way the duty of giving warn-
ing and keeping a lookout.   Davis v. L., H. & St. L. R.
Co., 122 Ky. 528, 92 S. W. 339, 29 Ky. Law Rep. 53;
McCabe's Admx. v. Maysville & Big Sandy R. Co., 89
S. W. 683, 28 Ky. Law Rep. 536; L. & N. R. Co. v.
Redmon's Admx., 122 Ky. 385, 91 S. W. 722, 28 Ky.
Law Rep. 1293.   But the operation of this rule has
been confined to cities and thickly populated com-
munities, and has not been, and will not be, extended
to rural communities or sparsely settled regions, al-
though footpaths crossing the track and the right of
way may be used by a large number of persons each
day.   In the country districts traversed by lines of
railway, it is no uncommon thing for numbers of per-
sons in going to public places, such as schoolhouses,
churches, stores, and the like, to use paths or ways
that cross the railroad tracks, but that are not private
or farm crossings, and also to travel upon the right
of way and tracks of the company.   It may be also

conceded that these persons use the right of way and tracks of the company with its acquiescence, in the sense that it does not interfere with their use, or takes steps to prevent it; but this use by individuals of the tracks and right of way of railroad companies in places of this character does not convert them from trespassers into licensees. Nor does it impose upon the company any duty of lookout or warning. Persons who thus use the tracks and right of way do so at their peril. They are trespassing upon dangerous premises, and assume the risk of any accident that may befall them by passing trains. Gregory v. L. & N. R. Co., 79 S. W. 238, 25 Ky. Law Rep. 1986; C. & O. Ry. Co. v. See's Admr., 79 S. W. 252, 25 Ky. Law Rep. 1995; Brown v. L. & N. R. Co., 97 Ky. 228, 17 Ky. Law Rep. 145, 30 S. W. 639, 17 Ky. Law Rep. 245; C. & O. R. Co. v. Perkins, 47 S. W. 259, 20 Ky. Law Rep. 608; Wilmuth's Admr. v. Illinois Central R. Co., 76 S. W. 193, 25 Ky. Law Rep. 671; L. & N. R. Co. v. Redmon's Admx., 122 Ky. 385, 91 S. W. 722, 28 Ky. Law Rep. 1293.

It is therefore not material whether the train that killed Nipp gave the statutory or any signals of its approach to the public crossing; nor does the speed at which the train was running enter into the case. Upon the facts presented by this record, the trial judge should have granted the request of appellant, and peremptorily instructed the jury to find for it.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.