## Chesapeake & Ohio Railway Company v. Dawson's Administrator.

(Decided May 28, 1914.)

Appeal from Lewis Circuit Court.

1. Railroads—Persons on Track—Licensee or Trespasser—Duty of Railroad Company.—The duty of a railroad company to give

warning and keep a look-out for persons crossing or walking along the track, or whether the party injured is a trespasser or licensee, depends, not on whether the accident occurred in a city or incorporated town, but on the number of persons using the track at the place of accident.

2. Railroads—Persons on Track—Licensee or Trespasser—Question for Jury.—Where plaintiff's decedent was struck and killed by defendant's train passing through a town of about 350 inhabitants, and it appeared that about 100 persons daily used the track at that point, it was proper to submit to the jury the question whether or not decedent was a trespasser or a licensee.

3. Railroads—Injury to Person Using Track—Contributory Negligence—Question for Jury.—Where plaintiff's decedent was struck and killed by a train going 50 miles an hour, and it appeared that it was a stormy day and snowing at the time, and there were in the vicinity two other engines emitting steam, the question of contributory negligence was properly submitted to the jury.

4. Master and Servant—Action Against Railroad Company and Engineer—Acquittal of Engineer—Effect on Verdict Against Company.—In an action against a railroad company and its engineer for personal injury, the fact that the engineer is acquitted of liability does not relieve the railroad company.

5. Pleading—Negligence—General Allegations.—In an action for personal injuries, it is sufficient to charge in a general way that the injury or death for which recovery is sought was caused by the negligence of the defendant, yet where plaintiff in his petition specifies the negligence relied on, the facts specified must constitute a cause of action, and his right to recover will be confined to such negligence.

6. Evidence—Negligence—General Allegation.—Where plaintiff did not specify the negligence relied on, but alleged in a general way that decedent was killed by the negligence and carelessness of defendants in operating the train, it was competent to prove the facts and circumstances bearing on the accident, including the use of the track by pedestrians, for the purpose of sustaining the general allegation of negligence.

WORTHINGTON, COCHRAN & BROWNING for appellant.

A. D. COLE and S. J. PUGH for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Ivan W. Sanders, as administrator of Nancy E. Dawson, brought this action against the Chesapeake & Ohio Railway Company, the Chesapeake & Ohio Railway Company of Kentucky, and David Evans, its engineer, to recover damages for the death of his decedent. From

a verdict and judgment against it, the Chesapeake & Ohio Railway Company appeals.

The accident happened under the following circumstances: Garrison is an unincorporated village of from 200 to 350 inhabitants. The greater portion of the village is situated east of the railroad depot. About 750 feet west of the depot a public highway crosses the railroad at right angles and runs to the Ohio River. This road, which is known as Garrison Lane, runs from the Ohio River ferry landing to a public road lying a few feet east of the railroad tracks and running parallel with the Ohio River. The decedent, Mrs. Dawson, lived near the terminus of Garrison Lane at the ferry landing. At the time of the accident there was but one main track through the village. A short distance below and above the depot were switch tracks which connected with the main line and extended some distance east and west. These switch tracks were occupied by two trains. The engine west of the depot was about 150 feet from the western end of the platform. The engine east of the depot was about 350 feet east of the eastern end of the depot. The platform itself was about 150 feet long. On the morning of the accident, which occurred February 28, 1911, Mrs. Dawson left her home near the ferry landing for the purpose of taking passage on the morning accommodation train. She walked from her home down Garrison Lane until she came to defendant's tracks. The crossing was blocked by a freight train. She could not turn to the right and go around the freight train because of the presence of a large pond and a wire fence along the right of way. For this reason she turned in an easterly direction and walked along the northern side of the freight train until she reached the engine. She then crossed over in front of the engine to the main track, and walked along the main track towards the .depot. She had proceeded but a short distance when she was struck and killed by a fast west-bound passenger train. When struck she was within 15 or 25 feet of the platform, and about 75 or 100 feet from the depot itself.

It was in proof that persons going to and from the depot to the ferry landing made use of defendant's track between the lane leading from the landing and the depot. Including these and other persons, the track was used daily by about 100 persons. . There was also proof to

the effect that it was snowing as decedent proceeded towards the depot, and that the two engines, one east and one west of the station, were emitting steam, which obscured the view of the approaching train. The train at the time of the accident was going between 50 and 60 miles an hour, and according to some of the witnesses, the bell was not being rung and no signal of the approach of the train to the depot was given.

For the defendants the engineer, Evans, testified that he was in charge of the engine which struck decedent. He blew the regular station whistle at the whistling post, which at that time stood just east of the water tank. At the passing of the water tank he blew a road crossing whistle. It was a very stormy morning, and was snowing at the time. The snow was banked on his front window. In order to see down the track he had to put his head out the side cab window. He did this just east of the road crossing between the freight depot and the passenger depot at the automatic train block signal. When he looked out he could see west of the depot for a little distance. He did not see Mrs. Dawson, and did not know that he had struck her until the arrival of the train at Covington. On cross-examination he stated that the fireman occupied the other side of the engine. Did not remember what his position was at the time. He sounded the station whistle about 100 feet east of the water tank. The fireman did not recollect exactly what he was doing when the engine passed through Garrison, but he generally put coal in the fire after the engine got off the curve. Never knew of Mrs. Dawson's being struck until he reached Covington. Other witnesses testified that the whistle for the station was blown.

(1). It is first insisted that the facts of this case are not sufficient to bring it within the rule that where the public generally, with the knowledge and acquiescence of the railroad company, having continually used its tracks for a long period of time, the presence of persons on the track at the point where it is so used must be anticipated by the company in running its trains, and it owes to such persons the duty of giving a warning and keeping a look-out. In this connection we are cited to a number of cases holding that the rule has been confined to cities and thickly populated communities, but does not extend to rural communities or sparsely settled regions, although the track at those places may be

used by a large number of persons. C. & O. Ry. Co. v. Nipp's Admrx., 125 Ky., 49, 100 S. W., 246; L. & N. R. R. Co. v. Redmon's Admrx., 122 Ky., 385, 91 S. W., 722; Miller's Admr. v. I. C. R. R. Co., 118 S. W., 348. In the more recent cases, however, the question whether the party injured is a mere trespasser or licensee is made to depend not on the fact that the accident happened in a city or incorporated town, but on the number of persons using the track at the place of accident. C. & O. Ry. Co. v. Warnock's Admr., 150 Ky., 75; Corder's Admr. v. C. N. O. & T. P. Ry. Co., et al, 155 Ky., 536.

In this case plaintiff shows that there were about 350 persons living in the town of Garrison. There was considerable travel between that point and the ferry landing. Persons going to and from the ferry landing to the depot used defendant's main track between Garrison Lane and the depot. The track was used daily by about 100 persons. The decedent was between 15 and 25 feet from the station platform, and from 75 to 90 feet from the depot building. Under these circumstances, it was proper to submit to the jury the question whether or not decedent was a trespasser to whom no duty was owing until after her peril was discovered, or a licensee to whom the defendant owed the duty of keeping a lookout and giving timely warning of the approach of the train.

(2). It is further insisted that the decedent was guilty of contributory negligence as a matter of law. It is argued that decedent was walking towards the train, and that although the engines of the two freight trains were emitting steam, she had passed the first engine, and between her and the second engine was a space of about 400 feet. There was therefore nothing to prevent her from seeing the train as it approached. Under our rule, decedent was required only to exercise ordinary care to discover the approach of the train, and to keep out of its way. It was a stormy day and was snowing at the time. The engines were also emitting steam. Even if it be true that there was a space of about 400 feet when decedent might have seen the train, yet the train was going at such a rate of speed that it covered this distance in five or six seconds. Taking into consideration these facts, and the further fact that decedent had the right to rely on defendant's giving timely warning of the approach of the train, we conclude that the

question of contributory negligence was properly submitted to the jury. Davis v. L. H. & St. L. Ry., 30 Ky. L. R., 172.

(3). The jury found for plaintiff against the railroad company alone. Another ground of complaint is that defendant cannot be held liable for the negligence of its engineer, Evans, when he himself was acquitted of liability. It is true that a number of courts so hold, but in this state a different rule prevails, and the question is no longer an open one. I. C. R. R. Co. v. Murphy, 123 Ky., 787; Broadway Coal Mining Co. v. Robinson, 150 Ky., 707.

(4) Another ground for reversal relied on is that the trial court erred in admitting evidence of the use of the track by a large number of persons in the absence of an allegation in the petition that the track was so used  We have repeatedly held that in an action for personal injuries it is sufficient to charge in a general way that the injury or death for which the recovery is sought was caused by the negligence of the defendant. Davis' Admr. v. Ohio Banking & Trust Co., 106 Ky., 844; Childs v. Drake, 2 Metc., 146; L. C. & L. R. Co. v. Case's Admr., 9 Bush, 728; L. & N. R. R. Co. v. Mitchell, 87 Ky., 327; L. & N. R. R. Co. v. Raines, 15 Ky. L. R., 423. Where, however, the plaintiff in his petition, specifies the negligence relied on, the facts specified must constitute a cause of action, and his right to recover will be confined to such negligence. W. A. Gaines & Co. v. Johnson, 133 Ky., 507, 105 S. W., 382; Lexington Ry. Co. v. Britton, 130 Ky., 676, 114 S. W. 295. Under the latter rule when a plaintiff relies on a failure to warn or to keep a lookout or to have the train under reasonable control, he must allege facts showing that the circumstances were such as to impose such duty on the railroad company. Embry v. L. & N. R. R. Co., 18 Ky. L. R., 434; Gibiden's Admr. v. L. & N. R. R. Co., 17 Ky. L. R., 789; Dilas' Admr. v. C. & O. Ry. Co., 71 S. W., 492. In this case plaintiff did not specify the negligence relied on, but alleged in a general way that decedent was killed by the negligence and carelessness of defendants in operating the train. It was therefore competent to prove the facts and circumstances bearing on the accident, including the use of the track, for the purpose of sustaining the general allegation of negligence.

Judgment affirmed.