## Buskirk, et al. v. Caudill, Administrator.

(Decided June 11, 1918.)

### Appeal from Breathitt Circuit Court.

1. Master and Servant—Fellow Servants—Contributory Negligence —Evidence—Peremptory Instruction—Question for Jury.—In an action against the master for the death of a servant, the master was not entitled to a peremptory instruction on the ground that the deceased was killed by the negligence of a fellow servant, or was guilty of contributory negligence, when the evidence was sufficient to make the question of fellow servant and contributory negligence one for the jury.

2. Master and Servant—"Gin" Hand on Log-loader—Logging Train —Duty to Maintain Lookout.—When a logging train departed the log-loader was on a spur track. While the logging train was gone, the log-loader went out on the main track and returned to the spur track without closing the switch. A few minutes later the logging train, consisting of fourteen cars pushed by an engine, returned and ran into the log-loader killing a "gin" hand who was at work under the loader: Held, in an action for the death of the gin hand that the conductor on the logging train owed to the decedent the duty of maintaining a proper lookout, notwithstanding the fact that it was the custom to have the switch leading to the spur track closed upon the return of the train.

3. Master and Servant—Injuries to Servant—Fellow Servants—"Gin" Hand on Log-loader—Engineer and Conductor on Logging Train. —The gin hand on a log-loader and the conductor and engineer of a logging train, though having occasional duties to perform in connection with the loader, are not fellow servants.

4. Appeal and Error—Master and Servant—Liability of Master for Negligence of Servant—Servant's Acquittal of Liability— Judgment Notwithstanding Verdict.—Since the master may be held liable for the negligence of his employee even though the employee be acquitted of liability, the master is not entitled to a judgment notwithstanding the verdict because there was no finding of damages against the negligent employee.

**5.** Removal of Causes After Remand—Sufficiency of Evidence. —Where, after remand, there was sufficient evidence of the local defendant's negligence to make his liability a question for the jury, non-resident defendants' petition to remove the cause because no case was made out against the local defendant, was properly denied.

CHESTER GOURLEY for appellants.

E. E. HOGG and J. M. McDANIEL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-MISSIONER—Affirming.

Isham Caudill, as administrator of Joseph Caudill, deceased, brought this suit against the Huntington Contracting Company, U. B. Buskirk and S. M. Croft, as partners doing business under the firm name of Kentucky River Hardwood Company, and Brad Hoover, to recover damages for his death. The jury returned a verdict in favor of plaintiff for $10,000.00 against Buskirk and Croft, as partners, and they appeal.

At the time of the accident, which occured on February 17, 1913, Buskirk and Croft were the owners of a large quantity of standing timber on the south fork of Quicksand and other waters of the north fork of Kentucky river, in Breathitt county. For the purpose of removing the timber they built and operated a narrow gauge railroad about 21 miles in length. About seven miles above Portsmouth and about fifteen miles from the terminus at Quicksand, there was a spur track leading from the main line up Jim's Branch for a distance of two or three miles. Buskirk and Croft contracted with the Huntington Contracting Company, a corporation, to operate the railroad and log their timber. To facilitate the work several self-operating steam log loaders were used. The crew of one of these log loaders consisted of Brad Hoover, the "loader-man," Lawrence Shannon, the "top-loader," Carl Strong, the "tong-hooker," and the deceased, Joe Caudill, who was known as a "gin" hand. Just prior to the accident the loader was placed on the Jim's Branch spur, and the engine and certain cars then ran down to Spicewood. While the engine was gone the log-loader went out on the main track to take water, and on its return to the spur, the switch was not closed. About thirty minutes later the engine returned with fourteen empty cars in front. At that time

Joe Caudill, who was seventeen years of age, and had been at work for about three weeks, was ordered by Hoover to go under the loader for the purpose of doing some work. The loader was then about seventy feet from the switch, and the approaching train came in contact with the loader and killed Caudill. According to the evidence for plaintiff, it was Caudill's duty to obey the orders and directions of Hoover, and not Caudill's duty to close the switch unless directed by Hoover. There was also evidence to the effect that it was the duty of the conductor, who was in the engine at the time, to be on the front of the train for the purpose of keeping a lookout; that the open switch could have been seen for a distance of about 150 feet, and that the train, which was going at the rate of about four miles an hour, could have been stopped within a distance of thirty or forty feet. According to the evidence for defendants, the members of the loader crew were under the control of Charles Wright, the scaler, and Hoover had no authority over Caudill. The defendants also showed that it was the duty of Caudill, who had opened the switch, also to close it, and that it was the uniform custom to have the spur switch closed on the return of the train from Spicewood.

The argument that a peremptory instruction should have gone not only on the ground that Hoover and Caudill were fellow servants, but for the further reason that Caudill was guilty of contributory negligence in not closing the switch, loses its force when it is recalled that there was substantial evidence to the effect that Caudill was subject to the orders of Hoover, and that it was not the duty of Caudill to close the switch unless directed to do so by Hoover, thus making the question of fellow servant and contributory negligence one for the jury.

But it is insisted that the trial court erred in authorizing a recovery for the negligence of those operating the train. In this connection it is argued that as it was the custom to have the spur switch closed upon the return of the train from Spicewood, those in charge of the train had no reason to anticipate that it would be open and were therefore not charged with the duty of keeping a lookout. It must be remembered that the engine was in the rear and was pushing about fourteen empty cars. The train was about 330 feet long. Both the engineer and conductor were in the engine. The con-

ductor testifies emphatically that it was his duty to be on the front end of the train, and that if he had been there he could have seen that the switch was open when about fifty yards away. Not only so, but the loader was about seventy feet from the switch and if the conductor had been on the front end of the train, he could have seen that the train was going on the spur track and towards the loader in time to have signaled the engineer to stop it within a distance of thirty or forty feet. Clearly where an employee is charged with a particular duty, he can not be relieved from the performance of that duty by the mere assumption that someone else will not be negligent. Under the circumstances we conclude that the court did not err in holding that the defendants were negligent in not having someone on the train in a position to keep an effective lookout, and in submitting this issue of negligence to the jury. Nor can we say that the engineer and conductor in charge of the train were fellow servants of Caudill. While it may be true that those in charge of the train had occasional duties to perform in connection with the loader, they and the "gin" hands were as a matter of fact, engaged in separate departments of work, and their duties were not such as to bring them into such relations that they could exercise an influence upon each other promotive of proper caution. Milton's Admr. v. Frankfort, &c. Traction Co., 139 Ky. 53, 129 S. W. 322; Stearns Coal Company v. King, 167 Ky. 719, 181 S. W. 329.

The point is also made that the trial court should have entered judgment upon the verdict in favor of the appellants, because no verdict was returned against Hoover, their negligent employee. Whatever the rule may be in other jurisdictions, it is well settled in this state that the master may be held liable for the negligence of his employee, even though the employee be acquitted of liability. Chesapeake & O. Ry. Co. v. Dawson's Admr., 159 Ky. 301, 167 S. W. 125; Broadway Coal Mining Co. v. Robinson, 150 Ky. 707, 150 S. W. 1000. It therefore follows the appellants were not entitled to a judgment notwithstanding the verdict because there was no finding against Hoover, their negligent employee.

Upon the institution of this suit in the Breathitt circuit court, all the defendants filed a petition and bond for removal of the cause to the United States District

Court for the Eastern District of Kentucky, on the ground of diversity of citizenship. The petition was sustained and the order of removal made. Subsequently it was made to appear in the Federal court that Brad Hoover, one of the defendants, was a resident of Kentucky, and the cause was remanded to the state court. At the conclusion of the evidence heard on the trial, Buskirk and Croft, and the Huntington Contracting Company, again filed their petition and bond for removal on the ground of separable controversy and fraudulent joinder, and it is claimed that their petition for removal should have been granted because no case was made out against Brad Hoover, the local defendant. Whether if that had been true a removal would have been proper at that time, it is unnecessary to determine. It is sufficient to say that there was substantial evidence that Hoover was superior in authority to the deceased, and that he was guilty of gross negligence on the occasion of the accident. That being true the cause was not removable because no case was made out against the local defendant.

On the whole, the issues involved were fairly submitted by the instructions, and we find no error in the record prejudicial to the substantial rights of appellants.

Judgment affirmed.