CHARLES H. STRICKFADEN et al., Respondents and Cross-appellants, v. GREENCREEK HIGHWAY DISTRICT et al., Appellants and Cross-respondents.

[248 Pac. 456.]

COUNTIES—MUNICIPAL CORPORATIONS—HIGHWAY DISTRICTS—LIABILITY OF HIGHWAY DISTRICT FOR NEGLIGENCE—LIABILITY FOR TORTS—OFFICERS—AUTOMOBILES—REASONABLE WARNING—TRIAL—INSTRUCTIONS—APPEAL AND ERROR.

1. "Counties" are legal political subdivisions of state created by sovereign power without solicitation or consent of people within territory affected, and are true public corporations.

2. "Cities," "towns," and "villages," are true municipal corporations, and, in addition to exercise of functions of self-government, transact matters of *quasi* private or public character.

3. "Highway districts," under C. S., sec. 1490 et seq., are *quasi*-municipal corporations, not created for purposes of government, but for purpose of improving highways within district.

4. In absence of express statute, state is not liable for damages either for nonperformance of its duties or for their improper exercise by those charged with execution.

5. Counties being involuntary subdivisions of state and being its agents are generally relieved from liability for damages for nonperformance of powers or improper exercise thereof, in absence of express statute.

6. In absence of liability under statute, municipal corporation, while acting in public capacity as arm of state, is not liable for failure to exercise powers or for negligent exercise thereof.

7. Municipalities are liable for torts in performance of ministerial, private, corporate, or proprietary functions.

8. Municipality is generally bound to exercise ordinary care to keep streets in reasonably safe condition for use of public.

Points Decided.

9. Municipalities are liable for negligent construction or maintenance of streets.

10. Highway districts, created under C. S., sec. 1490 et seq., are liable for their torts, in view of secs. 1505, 1658, 3929, 3396; and Const., art. 18, sec. 1, designating cities, highway districts, and counties as bodies politic.

11. Instruction, in action for personal injuries received when automobile struck excavation on highway, relative to liability of district and director of highways for failure to maintain warning sign, *held* correct when considered with other instructions.

12. "Negligence" on part of highway district with respect to excavation in highway is failure to perform act or do thing which reasonably prudent person under like circumstances would do or perform.

13. What would be reasonable warning of excavation, is question of fact for jury, which should consider place, nature of road, and general situation.

14. Jury, in determining question of reasonable care, with respect to warnings of excavation, should consider kind of travel and probable speed of vehicles.

15. Automobile driver on public road has right to assume road was reasonably safe.

16. Instruction that it was not negligence to drive at statutory speed, in absence of warning of "danger ahead," is proper, in absence of allegation or proof of negligence, except with respect to speed.

17. Instruction responsive to allegations and evidence is not incorrect.

18. Highway officers are generally liable for injuries in consequence of malfeasance or nonfeasance in performance of ministerial duties.

19. Rule of *respondeat superior* does not apply, where public officers are sought to be bound by negligence of subordinate officers, unless there was failure to exercise due care in selection or knowledge of negligent acts.

20. Highway district commissioners are not liable for injuries resulting from driving into excavation on highway, · in absence of failure to exercise due care to secure competent director or actual knowledge of negligence in performance of work.

21. Highway district has duty of giving reasonable warning to public of excavation on highway, being made under its direction.

22. Verdict for personal injuries from driving into excavation on highway against highway district will not be set aside because of inconsistency with verdict exonerating highway director from liability.

23. Jury's verdict can be set aside on appeal only for want of substantial evidence to support particular verdict, and not because of its inconsistency with another verdict.

APPEAL from the District Court of the Tenth Judicial District for Idaho County. Hon. Miles S. Johnson, Judge.

Action for damages for personal injury. Judgment for plaintiff. *Affirmed.*

F. E. Fogg, W. C. Arnold and H. Taylor, for Appellants.

The defendant highway district was engaged in the performance of a purely governmental state function, delegated to it by the state and is not liable in an action for damages for injuries resulting from negligence in the repair of its highways.

The highway district law expressly declares the improvement of highways to be an established state policy and clearly delegates the carrying out of such state purposes to highway districts. (C. S., secs. 1490, 1505, 1507.) See, also, as to general policy of the state respecting highways. (Sec. 1302.)

---

Publisher's Note.

1. See 7 R. C. L. 923.
2. See 19 R. C. L. 693.
4. See 25 R. C. L. 407.
5. See 7 R. C. L., 954.
6. See 19 R. C. L. 1081.

See Appeal and Error, 4 C. J., sec. 3187, p. 1166, n. 79.

Counties, 15 C. J., sec. 2, p. 391, n. 27; sec. 272, p. 569, n. 63.

Highways, 29 C. J., sec. 268, p. 553, n. 49, 58; sec. 302, p. 577, n. 99; sec. 441, p. 676, n. 11; sec. 444, p. 680, n. 64; sec. 446, p. 685, n. 34; sec. 461, p. 699, n. 30; sec. 485, p. 718, n. 51; sec. 486, p. 719, n. 59.

Motor Vehicles, 28 Cyc., p. 49, n. 49.

Municipal Corporations, 28 Cyc., p. 127, n. 40; p. 267, n. 21, 22; p. 1257, n. 6; p. 1258, n. 8; p. 1358, n. 47; p. 1366, n. 83; p. 1370, n. 94; p. 1785, n. 90.

Officers, 29 Cyc., p. 1445, n. 7.

States, 36 Cyc., p. 881, n. 13.

Trial, 38 Cyc., p. 1612, n. 13; p. 1883, n. 80.

Maintenance and repair of highways is a governmental function. (*Jensen v. Board of Supervisors,* 47 Wis. 298, 2 N. W. 320; *People v. Board of Supervisors,* 20 Mich. 95; *Milwaukee Co. v. Halsey,* 149 Wis. 82, 136 N. W. 139; *Youmans v. Thornton,* 31 Ida. 10, 13, 168 Pac. 1141; *Seidel v. Town of Woodbury,* 81 Conn. 65, 70 Atl. 58.)

Agencies of the state are not liable for negligence. (*Worden v. Witt,* 4 Ida. 404, 95 Am. St. 70, 39 Pac. 1114; *Davis v. Ada County,* 5 Ida. 126, 95 Am. St. 166, 47 Pac. 93; *Barnett v. Contra Costa,* 67 Cal. 77, 7 Pac. 177; *Youmans v. Thornton, supra; Uecker v. Town of Clyman,* 137 Wis. 38, 118 N. W. 247.)

Highway districts are municipal corporations of limited power, created for the sole purpose of performing as agencies of the state the purely state function of construction and maintenance of highways. (C. S., secs. 1490, 1505, 1507.)

Cities and villages are not analogous to highway districts but are granted general powers of local self-government. (C. S., secs. 3794, 3939, 3948, 3949, 3960, 3962, 3976; *Eikenberry v. Township of Bazaar,* 22 Kan. 556, 31 Am. Rep. 198; 4 Dillon, Municipal Corporations, 1643; *James v. Trustees of Wellston Tp.,* 18 Okl. 344, 11 Ann. Cas. 938, 88 Pac. 1052, 90 Pac. 100, 13 L. R. A., N. S., 1219.)

No distinction between malfeasance and nonfeasance is applicable. (*Weltsch v. Stark,* 65 Minn. 5, 67 N. W. 648; *Crowder v. Emery,* 206 Ill. App. 562; *Nagle v. Wakey,* 161 Ill. 387, 43 N. E. 1079; *Richardson v. Belknap,* 73 Colo. 52, 213 Pac. 335.)

As to erroneous instructions, plaintiff's negligence, see: *West Const. Co. v. White,* 130 Tenn. 520, 172 S. W. 301; *Lawson v. Fond Du Lac,* 141 Wis. 57, 135 Am. St. 30, 123 N. W. 629, 25 L. R. A., N. S., 40; *Ham v. Los Angeles Co.,* 46 Cal. App. 148, 189 Pac. 463.

The necessity and sufficiency of barriers was a question of fact for the jury. (*City of Rosedale v. Cosgrove,* 10 Kan. App. 211, 63 Pac. 287.)

Officers charged with the duty of the construction and maintenance of highways are not personally liable for injuries arising from defects or obstructions in such highways. (*Gorman v. County Commissioners*, 1 Ida. 655; *Worden v. Witt*, 4 Ida. 404, 95 Am. St. 70, 39 Pac. 1114; *Davis v. Ada County*, 5 Ida. 126, 95 Am. St. 166, 47 Pac. 9?; *Youmans v. Thornton*, 31 Ida. 10, 168 Pac. 1141; *McConnell v. Dewey*, 5 Neb. 385; *Wood v. Boone County*, 153 Iowa, 92, Ann. Cas. 1913D, 1070, 133 N. W. 377, 39 L. R. A., N. S., 168; *Gibson v. Sioux County*, 183 Iowa, 1006, 168 N. W. 80; *Snethen v. Harrison County*, 172 Iowa, 81, 152 N. W. 12; *Freeholders of Sussex County v. Strader*, 18 N. J. L. 108, 35 Am. Dec. 530; *Schneider v. Cahill* (Ky), 127 S. W. 143, 27 L. R. A., N. S., 1009; *Dunlap v. Knapp*, 14 Ohio St. 64, 82 Am. Dec. 468; *Lynn v. Adams*, 2 Cart. (Ind.), 143; *Richardson v. Belknap*, 73 Colo. 52, 213 Pac. 355; *Murray v. Board of Commrs. of Grant Co.*, 28 N. M. 309, 210 Pac. 1067; *Miller v. Ouray Elec. Light & Power Co.*, 18 Colo. App. 131, 70 Pac. 447; *People v. Hoag*, 54 Colo. 542, 131 Pac. 400; *Bolland v. Gihlstorf*, 134 Minn. 41, 158 N. W. 725; *Daniels v. Hathaway*, 65 Vt. 247, 26 Atl. 970, 21 L. R. A. 377; *Robertson v. Monroe*, 79 N. H. 336, 109 Atl. 495; *Jones v. Mobile & O. R. Co.* (Ky.), 127 S. W. 144; *Wheatley v. Mercer*, 9 Bush (Ky.), 704.)

There is no evidence that the commissioners were guilty of any wilful negligence, neither does the complaint state facts sufficient to sustain a finding to such effect. (*Templeton v. Beard*, 159 N. C. 63, 74 S. E. 735; *Crowder v. Emery*, 206 Ill. App. 562; *Huffstuttler v. Crabtree*, 197 Ill. App. 191; *Ruffin v. Garrett*, 174 N. C. 134, 93 S. E. 449.)

Even in states admitting the liability of such officers, officers of municipalities cannot be held personally liable where their only connection with the repairing of the highways was to officially as a board, authorize or direct a lawful improvement. Such acts being classed as *quasi*-judicial or discretionary. (*Nagle v. Wakey*, 161 Ill. 387, 43 N. E. 1079;

*Gray v. City of Batesville,* 74 Ark. 519, 86 S. W. 295; *Scoville v. Lange,* 204 Ill. App. 82.)

Especially are such officers not liable when, as in the present case, they were not physically or personally present directing the work. (*Brown v. West,* 75 N. H. 463, 75 Atl. 169; *Bowden v. Derby,* 97 Me. 536, 94 Am. St. 516, 55 Atl. 417, 63 L. R. A. 223; *Bates v. Horner,* 65 Vt. 471, 27 Atl. 134, 22 L. R. A. 824.)

Foremen or overseers engaged by the board are not to be deemed either agents, servants or employees of the board. Their employment is by the district and they are either agents, servants or employees of the district and acts of negligence by such employees are not to be imputed to the board or individual members of the board authorizing their employment. (*City of Richmond v. Long's Admr.,* 17 Gratt. (Va.), 375, 94 Am. Dec. 461; *Conwell v. Voorhees,* 13 Ohio, 523, 42 Am. Dec. 206; *Bailey v. Mayor,* 3 Hill (N. Y.), 531, 38 Am. Dec. 669; *McGuire v. Grant,* 1 Dutch. (N. J.)   356, 67 Am. Dec. 49.)

Jas. F. Ailshie and A. S. Hardy, for Respondents and Cross-appellants.

A highway district is a voluntary *quasi*-municipal corporation organized for the purpose of acquiring special valuable local benefits not furnished by the state, and like a city or village is liable for its negligence in the exercise of its corporate functions, and this is the basis on which municipal liability for negligence is predicated. (*Carson v. City of Genesee,* 9 Ida. 244, 108 Am. St. 127, 74 Pac. 862; *Moreton v. Village of St. Anthony,* 9 Ida. 532, 75 Pac. 262; *Village of Sand Point v. Doyle,* 11 Ida. 642, 83 Pac. 598, 4 L. R. A., N. S., 810; *Eaton v. City of Weiser,* 12 Ida. 544, 118 Am. St. 225, 86 Pac. 541; *Miller v. Village of Mullan,* 17 Ida. 28, 19 Ann. Cas. 1107, 104 Pac. 660; *Powers v. Boise City,* 22 Ida. 286, 125 Pac. 194; *Boise Development Co. v. Boise City,* 30 Ida. 675, 167 Pac. 1032; *Gorman v. County Commissioners,* 1 Ida. 655, 7 R. C. L. 955; *Wilson v. Ulysses Tp.,* 72 Neb.

807, 9 Ann. Cas. 1153, 101 N. W. 986; *Galveston, City of, v. Posnainsky*, 62 Tex. 118, 50 Am. Rep. 517; *Barnes v. District of Columbia*, 91 U. S. 540, 23 L. ed. 440; *Weet v. Brockport*, 16 N. Y. 161; *Chicago v. Seben*, 165 Ill. 371, 56 Am. St. 245, 46 N. E. 244; *Kincaid v. Hardin Co.*, 53 Iowa, 430, 36 Am. Rep. 236, 5 N. W. 589; *James v. Trustees*, 18 Okl. 344, 90 Pac. 105; *Richardson v. Belknap*, 73 Colo. 52, 213 Pac. 335; *Nagle v. Wakey*, 161 Ill. 387, 43 N. E. 1079.)

A county is held not to be liable for torts in the construction and maintenance of highways because of the fact that it is involuntarily created as an agency or arm of the state for the purposes of discharging duties of sovereignty in the administration of government. (*Gorman v. County Com.*, 1 Ida. 655; *Worden v. Witt*, 4 Ida. 404, 95 Am. St. 70, 39 Pac. 1114; *Davis v. Ada County*, 5 Ida. 126, 95 Am. St. 166, 47 Pac. 93; *Davis v. State*, 30 Ida. 137, Ann. Cas. 1918D, 911, 163 Pac. 373; *Youmans v. Thornton*, 31 Ida. 10, 168 Pac. 1141.)

A highway district is not a political municipality. It is not created for the purposes of government. (*Shoshone Highway Dist. v. Anderson*, 22 Ida. 109, 125 Pac. 219; *City of Nampa v. Nampa Irr. Dist.*, 19 Ida. 779, 115 Pac. 979; *Noon v. Gem Irrigation Dist.*, 205 Fed. 402.)

Highway districts are organized for the purpose of building and improving local roads; and powers exercised by such districts are corporate, proprietary, and for the community benefit of their inhabitants and are not governmental in character. The building of roads by such local corporations voluntarily organized is of a proprietary nature and not governmental, and for neglect in respect of such matters the districts are liable. (C. S., secs. 1532; *Boise City Dev. Co. v. Boise City*, 30 Ida. 675, 167 Pac. 1032; *Hettinger v. Good Roads Dist.*, 19 Ida. 313, 113 Pac. 721; *City of Nampa v. Nampa Irr. Dist., supra; Youmans v. Thornton, supra; Noon v. Gem Irr. Dist., supra; Powers v. Boise City*, 22 Ida. 286, 125 Pac. 194; *State v. Hefferman*, 243 Mo. 442, 148 S. W. 90; *Carson v. City of Genesee*, 9 Ida. 244, 108 Am. St. 134,

74 Pac. 862; *Rhobidas v. Concord,* 70 N. H. 90, 85 Am. St. 604, 47 Atl. 82, 51 L. R. A. 381.)

The courts distinguish between actual acts of malfeasance on the part of so-called *quasi*-municipalities, and mere passive negligent failure to act; and in the former case hold even *quasi*-municipalities such as counties, which, through their agents, have been guilty of malfeasance in creation of nuisances, to be liable for damages suffered on account of such nuisances. (*Conrad v. Ithaca,* 16 N. Y. 158; *Weet v. Brockport,* 16 N. Y. 161; *Mayor of N. Y. v. Fruze,* 3 Hill (N. Y.), 612; *Hart v. Board of Union Co.,* 57 N. J. L. 90, 29 Atl. 490; *Chandler v. Davidson Co.,* 142 Tenn. 265, 218 S. W. 222; 6 McQuillin on Munic. Corp., sec. 2641; *Harper v. Milwaukee,* 30 Wis. 365; *Mootry v. Town of Danbury,* 45 Conn. 550, 29 Am. Rep. 703; *Tewksbury v. City of Lincoln,* 84 Neb. 571, 121 N. W. 994, 23 L. R. A., N. S., 282; *Updike v. Omaha,* 87 Neb. 228, 127 N. W. 229, 30 L. R. A., N. S., 589; *City of Joliet v. Verley,* 35 Ill. 58, 85 Am. Dec. 342; *Hughes v. City of Fond Du Lac,* 73 Wis. 380, 41 N. W. 407; *Nocks v. Whiting,* 126 Iowa, 405, 106 Am. St. 371, 102 N. W. 109; *City of Jacksonville v. Drew,* 19 Fla. 106, 45 Am. Rep. 5; *City of Denver v. Rhodes,* 9 Colo. 554, 13 Pac. 729; Thompson on Negligence, 2d ed., secs. 1188, 1189 and 5788; Dillon, Munic. Corp., 5th ed., sec. 1717; *City of Globe v. Schute,* 22 Ariz. 280, 196 Pac. 1024; *Garrison v. Borough of Ft. Lee,* 92 N. J. L. 566, 106 Atl. 381.)

A driver has a right to assume a public highway in constant use is reasonably safe for travel and in its normal condition, and to act on that presumption; the court's instruction respecting the same was correct. (*Dillabough v. Okanogan Co.,* 105 Wash. 609, 178 Pac. 802; *Straight Creek Coal Co. v. Mullins,* 189 Ky. 661, 225 S. W. 726; *Daniels v. County Court,* 69 W. Va. 676, 72 S. E. 782, 37 L. R. A., N. S., 1158.)

If appellant had desired other instructions upon this feature of the case, it was its duty to present them to the trial court, and having failed to do so it cannot now complain. (*Lessman v. Anschustigui,* 37 Ida. 127, 215 Pac. 460; *Joyce*

*Bros. v. Stanfield,* 33 Ida. 68, 189 Pac. 1104; *Barter v. Stewart Min. Co.,* 24 Ida. 540, 135 Pac. 68.)

Officers and agents of a highway district are personally liable for positive and affirmative acts of negligence for creating and leaving nuisances and dangerous places in highways. (*Mott v. Hull,* 51 Okl. 602, 152 Pac. 92, L. R. A. 1916B, 1184; *Hover v. Barkhoff,* 44 N. Y. 113; *Robinson v. Chamberlain,* 34 N. Y. 389, 90 Am. Dec. 713; *Doeg v. Cook,* 126 Cal. 213, 77 Am. St. 171, 58 Pac. 707; *Barnes v. District of Columbia,* 91 U. S. 540, 23 L. ed. 440; *Bennett v. Whitney,* 94 N. Y. 302; *Fitzpatrick v. Slocum,* 89 N. Y. 385; *Batdorf v. Oregon City,* 53 Or. 402, 18 Ann. Cas. 287, 100 Pac. 937; *Mattson v. Astoria,* 39 Or. 577, 87 Am. St. 687, 65 Pac. 1066; *City of Greensborough v. McGibbony,* 93 Ga. 672, 20 S. E. 37; *Solberg v. Schlosser,* 20 N. D. 307, 127 N. W. 91, 30 L. R. A., N. S., 1111; *Harris v. Carson,* 40 Ill. App. 147; C. S., sec. 1520.)

"A municipality acts ministerially in constructing and repairing public improvements or work including streets, and hence is liable to persons injured by negligence in the performance of such duties, and this is true, notwithstanding the improvements are a public benefit." (6 McQuillin on Munic. Corp., sec. 2634; *Bowden v. Kansas City,* 69 Kan. 587, 105 Am. St. 187, 1 Ann. Cas. 955, 77 Pac. 573, 66 L. R. A., N. S., 181; *Johnston v. Dist. of Columbia,* 118 U. S. 19, 6 Sup. Ct. 923, 30 L. ed. 75; *City of Denver v. Rhodes,* 9 Colo. 554; 13 Pac. 729; *Safety Insulated Wire Co. v. City of Baltimore,* 66 Fed. 140, 13 C. C. A. 375; *Devine v. City of Chicago,* 213 Ill. App. 299; *Henson v. Kansas City,* 277 Mo. 443, 210 S. W. 13; *Weightman v. Washington,* 1 Black (U. S.), 39, 17 L. ed. 52; *Boyd v. Kansas City,* 291 Mo. 622, 237 S. W. 1001; *Walters v. City of Carthage,* 36 S. D. 11, 153 N. W. 881; *City of Milledgeville v. Holloway,* 32 Ga. 734, 124 S. E. 802.)

GIVENS, J.—Appellant, a regularly organized highway district under the laws of the state of Idaho, through its

employees had left crosswise of the highway an open ditch or excavation in which was to be placed a culvert. Loose rock and dirt from the excavation was piled to the height of about 2½ feet along the banks of the trench. Respondent, and cross-appellant, and family approaching this excavation or ditch down a slight grade at night struck a plank placed across the road on the ground as a warning which so interfered with the management of the automobile as to prevent its being stopped before the car had run against and partly into the rocks and dirt piled along the sides of the excavation, which resulted in respondent, his wife, and children being severely injured. Respondents and cross-appellants brought suit for damages against the highway district, the three commissioners of the district, and one Dasenbrock, appellant's foreman or superintendent in charge of the construction work. At the conclusion of plaintiffs' case the court granted a nonsuit in favor of the three commissioners. The jury returned a verdict in favor of respondent and cross-appellant and against the highway district but not against Dasenbrock. Appellants appealed from the judgment based on such verdict, and respondents appealed from the judgment of nonsuit in favor of the commissioners and also because the verdict was in favor of Dasenbrock.

Appellants contend that a highway district is a *quasi*-public corporation having the particular characteristics of a county, and that it is therefore not liable for the consequences herein detailed. Respondents, on the other hand, contend that a highway district is a *quasi*-municipal corporaporation such as a city, town or village and is therefore liable.

Highway districts as created by the Highway District Law of Idaho, C. S., sec. 1490 et seq., are a comparatively new organization and the law with regard to their liability for torts is in this state an open question.

[1]   Counties may be said to be true public corporations. They are local organizations, which for the purposes of civil administration are invested with a few func-

tions characteristic of a corporate existence. They are legal political subdivisions of the state, created or superimposed by the sovereign power of the state of its own sovereign will, without any particular solicitation or consent of the people within the territory affected. (1 Dillon, Municipal Corporations, 5th ed., sec. 35, p. 64; *Dixon v. People,* 53 Colo. 527, 127 Pac. 930; *Commrs. Hamilton County v. Mighels,* 7 Ohio St. 109; 1 Smith, Modern Law of Municipal Corporations, sec. 6, and cases cited; *O'Brien v. Rockingham County,* 80 N. H. 522, 120 Atl. 254; *Carson v. City of Genesee,* 9 Ida. 244, 108 Am. St. 127, 74 Pac. 862; *Worden v. Witt,* 4 Ida. 404, 95 Am. St. 70, 39 Pac. 1114; *Gorman v. County Commissioners,* 1 Ida. 655; *Youmans v. Thornton,* 31 Ida. 10, 168 Pac. 1141; *Davis v. Ada County,* 5 Ida. 126, 95 Am. St. 166, 47 Pac. 93; *James v. Trustees of Welliston Tp.,* 18 Okl. 344, 11 Ann. Cas. 938, 88 Pac. 1052, 90 Pac. 100, 13 L. R. A., N. S., 1219; *Cassidy v. City of St. Joseph,* 247 Mo. 197, 152 S. W. 307; *Heigel v. Wichita County,* 84 Tex. 392, 31 Am. St. 63, 19 S. W. 562; 15 C. J., sec. 1, pp. 388–392 and cases cited.)

✓ [2]   Cities, towns and villages may be classified as true municipal corporations, voluntarily organized under the general law at the request and with the concurrent consent of their members, and in addition to the exercise of the functions of self-government, transact matters of a *quasi*-private or business character not governmental in their nature but rather proprietary or for the acquisition of private gain for the municipality and its citizens. (*Carson v. Genesee, supra; Commrs. Hamilton County v. Mighels, supra;* 1 Dillon, Municipal Corporations, 5th ed., secs. 31, 35; *Kahn v. Sutro,* 114 Cal. 316, 46 Pac. 87, 33 L. R. A. 620; 11 C. J. 789.)

[3]   Highway districts as intended by the Highway District Law, *supra,* cannot be said to correspond identically with either public corporations, or counties, or municipal corporations, or cities, towns and villages. They are *quasi*-municipal corporations, not political municipalities, not created for purposes of government, but for a special purpose,

namely, that of improving the highways within the district.

"A highway district as intended by this act is not a political municipality. It is not created for the purpose of government. It is an entirely different kind of municipality from that of a city, town or village. Its powers are specially limited to the construction of highways upon lines of benefits to the inhabitants and the property within the territory embraced within the district. It is made a taxing district and consists of such territory as may be determined by the county commissioners in creating the same. It is contemplated by the provisions of the statute that the property and the people of the entire district are interested in the construction and improvement of the public highways of the district, and it is created for a special purpose, to wit, the assessment of property within the district for the sole and only purpose of improving the highways within the district." (*Shoshone Highway Dist. v. Andersen*, 22 Ida. 109, 125 Pac. 219.)

"A highway district in Idaho is not a political municipality created for governmental purposes, but its powers are specially limited to the construction of highways for the benefit of the inhabitants and property therein, and its power to tax is not unlimited." (*Kimama Highway Dist. v. Oregon Short Line R. Co.*, 298 Fed. 431.)

"A highway district is not a political municipality, but its powers are specially limited to the construction of highways for the benefit of the people and property therein, and when it is an authorized taxing district its powers of taxation are limited to those purposes." (*Oregon Short Line R. Co. v. Kimama Highway Dist.*, 287 Fed. 734.)

[4] It is well settled that in the absence of an express statute to that effect, the state is not liable for damages either for nonperformance of its powers or for their improper exercise by those charged with their execution. [5] Counties are generally likewise relieved from liability, for the same reason. They are involuntary subdivisions or arms of the state through which the state operates for convenience in

the performance of its functions. In other words, the county is merely an agent of the state and since the state cannot be sued without its consent, neither may the agent be sued. (*Davis v. State*, 30 Ida. 137, Ann. Cas. 1918D, 911, 163 Pac. 373; *Worden v. Witt, supra; Gorman v. County Commrs., supra; Davis v. Ada County, supra; Youmans v. Thornton, supra; Cassidy v. City of St. Joseph, supra; O'Brien v. Rockingham County, supra; Mullinax v. Hambright*, 115 S. C. 22, 104 S. E. 309; *Dixon v. People, supra;* 15 C. J., sec. 273, p. 569, and cases cited.)

✓ [6] It is well recognized that there are two kinds of duties imposed or conferred upon municipal corporations; those termed public governmental functions, where the municipality performs certain duties as an agent or arm of the state; and those other municipal activities which are sometimes termed administrative, ministerial, corporate, private, or proprietary functions, performed for the municipality's own benefit or for the benefit of its citizens, and while acting in the performance of its governmental functions or in a public capacity as an arm or agency of the state the municipality is not liable for its failure to exercise these powers or for their negligent exercise, unless such liability has been imposed by statute. (*Ackeret v. City of Minneapolis*, 129 Minn. 190, Ann. Cas. 1916E, 897, 151 N. W. 976, L. R. A. 1915D, 1111, and cases cited; *O'Brian v. Rockingham County, supra; Scales v. City of Winston-Salem*, 189 N. C. 469, 127 S. E. 543; *Van Dyke v. City of Utica*, 203 App. Div. 26, 196 N. Y. Supp. 277; *Griffith v. City of Butte*, 72 Mont. 552, 234 Pac. 829; *Colwell v. Waterbury*, 74 Conn. 568, 51 Atl. 530, 57 L. R. A. 218; *Mayor of Wilmington v. Vandergrift*, 1 Marv. (Del.) 1, 65 Am. St. 256, 29 Atl. 1047, 25 L. R. A. 538; *Love v. Atlanta*, 95 Ga. 129, 51 Am. St. 64, 22 S. E. 29; *New Orleans v. Kerr*, 50 La. Ann. 413, 69 Am. St. 442, 23 So. 384; *Keely v. Portland*, 100 Me. 260, 61 Atl. 180; *Aitkin v. Wells River*, 70 Vt. 308, 67 Am. St. 672, 40 Atl. 829, 41 L. R. A. 566; *Wood v. Hinton*, 47 W. Va. 645, 35 S. E. 824; *Pacific Paper Co. v. Portland*, 68 Or. 120, 135

Pac. 871; *Hewitt v. City of Seattle,* 62 Wash. 377, 113 Pac. 1084, 32 L. R. A., N. S., 632; *Boise Development Co. v. Boise City,* 30 Ida. 675, 167 Pac. 1032; *Eastern Illinois State Normal School v. City of Charleston,* 271 Ill. 602, 111 N. E. 573, L. R. A. 1916D, 991; *Schwalk's Admr. v. City of Louisville,* 135 Ky. 570, 122 S. W. 860, 25 L. R. A., N. S., 88; *Nelson v Kansas City,* 170 Mo. App. 542, 157 S. W. 94; *Everly v. Adams,* 95 Kan. 305, 147 Pac. 1134, L. R. A. 1915E, 448.)

✓[7] In its capacity as a private corporation a municipality stands on the same footing as would an individual or body of persons upon whom a like special franchise had been conferred. Hence it is liable in the same manner as such individual or private corporation would be under like circumstances. (*Chicago v. Selz,* 104 Ill. App. 376; *Potter v. New Whatcom,* 20 Wash. 589, 72 Am. St. 135, 56 Pac. 394.) Thus municipalities are held liable for their torts in the performance of ministerial, private, corporate or proprietary functions. See authorities, *supra;* concurring opinion in *Davoust v. City of Alameda,* 149 Cal. 69, 9 Ann. Cas. 847, 84 Pac. 760, 5 L. R. A., N. S., 536.)

[8] In those jurisdictions where redress is allowed against municipalities the general rule is that a municipality is bound to exercise ordinary care to keep its streets in a condition of reasonable safety for the use of the public. (Note to *Dudley v. Flemingsburg,* 103 Am. St. 263; *Jefferson v. Chapman,* 127 Ill. 438, 11 Am. St. 136, 20 N. E. 33; *Anderson v. East,* 117 Ind. 126, 10 Am. St. 35, 19 N. E. 726, 2 L. R. A. 712; *Scott v. Provo City,* 14 Utah, 31, 45 Pac. 1005.) But from an analysis of the decisions supporting this doctrine it is apparent that the reasoning for such rule falls within two divergent classes. The first class being those cases which have held that the care and maintenance of the streets is a ministerial, corporate, or private duty the city owes to its inhabitants and not a public or governmental duty.

"The duty of the city in connection with the maintenance of its streets is ministerial and corporate, and for its negligence in that connection it is liable. *Sullivan v. City of*

*Helena,* 10 Mont. 134, 25 Pac. 94; *Snooks v. City of Anaconda,* 26 Mont. 128, 66 Pac. 756; *Ford v. City of Great Falls,* 46 Mont. 292, 127 Pac. 1004." (*Griffith v. City of Butte, supra.*)

"In *Sutton v. Snohomish,* 11 Wash. 24, 48 Am. St. 847, 39 Pac. 273, we decided that the duty of a city to keep streets in repair was not a governmental but a ministerial duty, and for a breach thereof an action will lie in favor of a person injured as a result of such negligence. In the course of the opinion it was said: 'There is undoubtedly a want of harmony among the decisions of the courts upon this question; but we believe the decided weight of authority, as well as sound reason, is in favor of the view above expressed'—citing many leading cases to sustain the announcement. This case was followed with approbation in *Saylor v. Montesano,* 11 Wash. 328, 39 Pac. 653; *Lorence v. City of Ellensburgh,* 13 Wash. 341, 52 Am. St. 42, 43 Pac. 20; *Mischke v. City of Seattle,* 26 Wash. 616, 67 Pac. 357; *Brabon v. City of Seattle,* 29 Wash. 6, 69 Pac. 365; *Prather v. City of Spokane,* 29 Wash. 549, 92 Am. St. 923, 70 Pac. 55, 59 L. R. A. 346; *Shearer v. Town of Buckley,* 31 Wash. 370, 72 Pac. 76; and the last expression of this court on that subject announcing the same view is *Hayes v. City of Vancouver,* 61 Wash. 536, 112 Pac. 498." (*Hewitt v. City of Seattle, supra.*)

(*Cleveland v. St. Paul,* 18 Minn. 279; *O'Brien v. St. Paul,* 25 Minn. 331, 33 Am. Rep. 470; *Hewison v. New Haven,* 37 Conn. 475, 9 Am. Rep. 342; *Requa v. Rochester,* 45 N. Y. 129, 6 Am. Rep. 52; *Carson v. Genesee, supra; Stevens v. City of Muskegon,* 111 Mich. 72, 69 N. W. 229, 36 L. R. A. 777.) This class of cases is in entire harmony with those decisions announcing the rule that municipalities are liable for their proprietary, corporate or ministerial functions but not liable for public or governmental functions.

✓ The second class of decisions are those which class the maintenance and care of the streets by a municipality as governmental or public functions, and at the same time hold the city

liable for misfeasance or nonfeasance in the exercise of such governmental duty. This class of decisions practically without exception recognizes that such conclusion is illogical and not based upon sound reason when the nonliability for governmental functions is considered and states that such liability is an exception to the general rule. The reason most generally assigned for making a distinction between such cases and those governed by the general rule is that such municipalities, having been given the exclusive control over their streets with ample power to provide funds to care for and maintain them, are chargeable with the duty to keep them safe for travel, and that it follows by implication therefrom that they are liable for failure to perform such duty. (*Ackaret v. City of Minneapolis, supra.*)

"According to the great weight of authority, cities and towns are not liable for negligence in the performance of a public governmental duty imposed upon them for public benefit, and from which they in their corporate or proprietary capacity derive no pecuniary profit. However, the universally recognized liability of such municipalities for negligence in not keeping their streets in repair affords an exception to the general rule, which, as said in *Snider v. City of St. Paul,* 51 Minn. 466, 53 N. W. 763, 18 L. R. A. 151 (a case almost identical in point of fact with this): 'We think the courts would do better to rest either upon special consideration of public policy or upon the doctrine of *stare decisis* than to attempt to find some strictly legal principle to justify the distinction. . . . . ' " (*Schwalk's Admr. v. City of Louisville, supra.*)

"An exception exists with reference to maintaining public streets and ways in a condition of safety for public travel. This duty is regarded as having been imposed directly upon the city. Being so imposed the duty is ministerial in character and the city is responsible for negligence in discharging it." (*Everly v. Adams,* 95 Kan. 305, 147 Pac. 1134, L. R. A. 1915E, 448; *Nelson v. Kansas City,* 170 Mo. App. 542, 157 S. W. 94; *Cassidy v. City of St. Joseph,* 247

42 Idaho—48

Mo. 197, 152 S. W. 306; *Emmons v. City of Virginia,* 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860.)

"As to the line of decisions already mentioned, where recovery of damages was allowed for injuries growing out of the negligent construction or maintenance of highways, since in some of these cases the courts have said that the governmental agencies were liable, and the rule of *respondeat superior* applied, because such negligence represented a breach of an imperative duty expressly imposed by the state on the municipalities, we must also notice that in several of our opinions we have taken occasion to point out that the decisions, fixing municipalities with responsibility for damages in this particular kind of case, are in a class by themselves, depending more on long-established precedent than on fixed rules or pure logic. See *Ford v. School District,* 121 Pa. 543, 549, 15 Atl. 812, 1 L. R. A. 607; *Briegel v. Philadelphia,* 135 Pa. 451, 458, 20 Am. St. 885, 19 Atl. 1038; *Hubbard v. Crawford County,* 221 Pa. 438, 70 Atl. 805. As suggested by Judge Keller in *Cousins v. Butler County,* 73 Pa. Super. Ct. 86, 94, the explanation of the highway cases may more probably be found in historic reasons than in general rules, or by the process of legal or logical deduction therefrom. This is quite possibly correct, for, when the latter methods are pursued, it will be seen that if a breach of duty imposed be accepted as the sole criterion by which to judge questions of liability in cases of negligence toward others on the part of municipal employees, then, since so far as legislative mandates are concerned, the duty to organize and maintain police and fire service is just as mandatory on cities (at least on those of the first class) as to construct and maintain highways, such a breach could as well give rise to the right to sue for damages growing out of the negligence of the police or firemen as of employees in charge of, or working on, the construction or repair of highways; yet it has been repeatedly held that, except where a right to recover is expressly given by act of assembly, no suit lies against municipalities for negligence of their police

or fire departments." (*Scibilia v. City of Philadelphia,* 279 Pa. 549, 124 Atl. 273, 32 A. L. R. 981.)

[9] In either event, whether the duty of maintaining and constructing streets is said to be a governmental duty or a private or ministerial duty, the conclusion reached in both lines of decisions has been the same, namely, that municipalities are liable for negligent construction or maintenance of their streets. Idaho has followed the former and what appears to be the better rule, based upon logic and good reason, holding that a municipality in the care and maintenance of its streets is performing a ministerial or private duty which it owes to the individuals it impliedly invites to travel over its streets, and for negligence in performing such functions the municipality is liable.

"It seems to us that incorporated cities and villages act not only in a legislative and governmental capacity, but also in a private or business capacity, and that the care and repair of streets and sidewalks cannot reasonably be said to be the exercise of legislative or governmental discretion but is rather a ministerial or business duty it owes to the individuals it impliedly invites to travel over its thoroughfares." *Carson v. Genesee, supra,* this case stating in the syllabus that "such liability results from the exclusive control granted over the streets, and the duty imposed to keep them in repair, and the power granted to raise adequate revenue therefor."

The doctrine announced in *Carson v. Genesee, supra,* has been uniformly followed in this state, holding cities liable for their defective streets. (*Moreton v. St. Anthony,* 9 Ida. 532, 75 Pac. 262; *Miller v. Village of Mullan,* 17 Ida. 28, 19 Ann. Cas. 1107, 104 Pac. 660; *Powers v. Boise City,* 22 Ida. 286, 125 Pac. 194; *Village of Sandpoint v. Doyle,* 11 Ida. 642, 83 Pac. 598, 4 L. R. A., N. S., 810; *City of Kellogg v. McRae,* 26 Ida. 73, 141 Pac. 86; *Beaton v. City of St. Maries,* 27 Ida. 638, 151 Pac. 996.)

That there is a distinction between certain acts of a municipality to the effect that certain classes of acts are deemed

governmental in character while others are deemed merely corporate or private in character is not questioned by any of the authorities, and the authorities are not so very inharmonious in describing the qualities which determine whether an act is governmental or corporate, but they quite frequently disagree when it comes to applying the principles of law to a concrete case. It has been said that the distinction between governmental and *quasi*-private acts of a municipality may be determined by this, namely, if the power conferred on the municipality be granted for public purposes exclusively, it is governmental, but if for private advantage and emoluments, though the public derive a common benefit therefrom the corporation *quoad hoc* is to be regarded as a private corporation. (*Stevens v. Muskegon, supra; McAulfee v. Victor,* 15 Colo. App. 337, 62 Pac. 231.) A great majority of cases determine whether the act is governmental or proprietary in character from the inherent nature of the act, that is, whether truly governmental in character or an act which may be performed by an individual.

"Where duties are cast on a municipality by mandatory provisions of law, or by permissive provisions adopted by the municipality, and are not in their nature governmental, but could be carried on by individuals and relate to the convenience, pleasure, or welfare of individual citizens, the municipality is acting as a legal individual, in a ministerial and administrative capacity, and under the obligation to perform such duties with reasonable care and vigilance." (*Van Dyke v. City of Utica, supra.*)

From a study of the cases it is apparent that in determining whether an act is governmental or corporate, all rest upon the inherent nature of the act and to whom the benefits of such acts inure.

"An act of a municipality is governmental in its nature when it is done in the exercise of the police power, or of legislative, discretionary, or judicial powers conferred upon the municipality for the benefit of the public." (*Sandlin v. City of Wilmington,* 185 N. C. 257, 116 S. E. 733.)

"Difficulty is often encountered in drawing the distinction between these two branches of municipal activity, the one sometimes apparently impinging on the other. Without undertaking to lay down any definition which would be universal in its application, or to explain the apparent want of uniformity in some of the 'border line cases' we may say that in its public or governmental character a municipal corporation acts as an agency of the state for the better government of that portion of its people who reside within the municipality, while in its private character it exercises powers and privileges for its own corporate advantage. Its governmental powers are legislative and discretionary, and for injury resulting from a failure to exercise them, or from their negligent exercise, the municipality is exempt from liability; but it may be liable in damages for injury proximately caused by negligence in the exercise of its ministerial or absolute duties." (*Scales v. City of Winston-Salem, supra.*)

(*Hewitt v. City of Seattle, supra; Griffith v. City of Butte, supra; Emmons v. City of Virginia,* 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860; *Scibilia v. City of Philadelphia, supra; Schwalk's Admr. v. City of Louisville, supra; Harris v. District of Columbia,* 256 U. S. 650, 41 Sup. Ct. 610, 65 L. ed. 1146, 14 A. L. R. 1471; *City of Pass Christian v. Fernandez,* 100 Miss. 76, 56 So. 329; *Eastern Illinois State Normal School v. City of Charleston, supra; Hines v. City of Nevada,* 150 Iowa, 620, 130 N. W. 181, 32 L. R. A., N. S., 797; *James v. City of Charlotte,* 183 N. C. 630, 112 S. E. 423; *Blake McFall Paper Co. v. City of Portland,* 68 Or. 126, 135 Pac. 873; *Nelson v. Kansas City,* 170 Mo. App. 542, 157 S. W. 94; *Everly v. Adams,* 95 Kan. 305, 147 Pac. 1134, L. R. A. 1915E, 448; *Maximilan v. Mayor,* 62 N. Y. 160, 20 Am. Rep. 468.)

Since it has been held in this state that the building of roads is not a governmental duty but a ministerial one, *Carson v. Genesee, supra,* and that a highway district does not perform governmental duties, *Shoshone Highway District v. Anderson, supra,* it does not appear necessary to lay

down any exact rule for the determination of what is a governmental or proprietary function.

[10]   From C. S., sec. 1491, of chapter 66, known as the "Highway District Law" we find that highway districts are created voluntarily by the people of the district petitioning for such a district, and by C. S., sec. 1507, the district is given exclusive general supervision and jurisdiction over the repair and construction of roads within the district, much in the same manner as that given to municipalities. As stated in *Shoshone Highway District v. Anderson, supra; Kimama Highway District v. Oregon Short Line R. Co., supra,* and *Oregon Short Line R. Co. v. Kimama Highway District, supra,* a highway district in Idaho is not created for governmental purposes, but its powers are specially limited to the construction of highways for the benefit of the inhabitants and property within the district.

"The improvement of highways is hereby declared to be the established and permanent policy of the state of Idaho; and the duty is hereby imposed upon the highway boards provided for by this chapter, of improving and maintaining the public highways within their district and of securing as rapidly as the public revenues will permit, and of maintaining permanent good roads of hard surface and properly graded and available for convenient travel thereon throughout the year. Highways are roads, streets, alleys and bridges laid out or erected by the public or dedicated or abandoned to the public.

"This act shall be known as the highway district law of the state of Idaho, and whenever cited, enumerated, referred to or amended, may be designated simply as the highway district law, adding, when necessary, the number of the section." (C. S., sec. 1490.)

The power to tax has been given such district for the purpose of performing the work. In all these respects the highway district, so far as care and maintenance of roads is concerned, is like a municipality. Both are voluntary, the duty of maintaining the roads within their territory is imposed upon both, a method for obtaining adequate funds

to perform such duties is provided in both cases, and for purposes of road building both are organized for the primary benefit of the inhabitants of the territory incorporated. Cities, C. S., sec. 3929, highway districts, C. S., sec. 1505, and counties, C. S., sec. 3396, are all designated as bodies politic and corporate, and while the duties imposed upon highway commissioners are similar to those exercised by county commissioners in respect to roads, the liability of the highway district is not in any way limited, C. S., sec. 1507. Furthermore, municipalities which may happen to be within a highway district are by statute made divisions of such district. (C. S., sec. 1658.) Counties are legal subdivisions of the state, sec. 1, art. 18, Const. Idaho. As indicated elsewhere herein, municipalities are in this state liable for their torts; if therefore, highway districts were not liable for their torts, since cities are, we would have the anomalous condition of a city as a division of a highway district not liable. It would seem, therefore, that the honors are about even in attempting to apply, so far as these statutes are concerned, the nonliability of a county, or the liability of a municipality, to highway districts. It has been held and followed without deviation in this state that the building of roads by a city is a ministerial function and it cannot be logically said that a corporation voluntarily organized for the express purpose of building roads for the primary benefit of the inhabitants of such district, and when such district has been held not to be created for governmental purposes and when a method for raising adequate funds for such purpose has been provided, is performing a governmental duty. It is true that the building of good roads is of benefit to the public but it is also of equal or greater benefit to the district or city to have good roads, and the only apparent reason for a highway district to voluntarily take the care and maintenance of the roads within the district upon itself is for the benefit of that district. A similar situation arises with regard to irrigation districts. In *City of Nampa v. Nampa Irr. Dist.*, 19 Ida. 779, 115 Pac. 979, the only Idaho case

we find involving the relations of such a district to third persons, the court said:

"An irrigation district is a public *quasi*-corporation, organized, however, to conduct a business for the private benefit of the owners of land within its limits. . . . . It is, in the administration of its business, the owner of its system in a proprietary rather than a public capacity, and must assume and bear the burdens of proprietary ownership."

In *Noon v. Gem Irrigation Dist.*, 205 Fed. 402, Judge Deitrich very ably sets forth the reasons why an irrigation district should be placed, as to its liability for its torts, in the same category as cities, towns and villages, saying:

"Only in the most remote sense can it be said to exercise any governmental functions, or to sustain any relation to the political system of the state. Primarily it is brought into existence and maintained for the purpose of ministering to the pecuniary benefit of private persons holding irrigable lands within its territorial limits. Doubtless it contributes to the public good in that, through it, the material resources of the state are developed. . . . . "

Even though it were said that the duty of maintaining and caring for streets was a governmental function, the likeness of a highway district to a municipality with respect to road building would permit holding the highway district liable, in line with the decisions, stating that though such duty is governmental, the duty is imposed upon them and adequate funds have been provided to build and safely maintain its roads. As stated in *Orlando v. Pragg*, 31 Fla. 111, 34 Am. St. 26, 12 So. 368, 19 L. R. A. 196:

"When, however, the act done is one for which municipal liability must be denied because it is governmental in character and is one which the municipality did intentionally and in the assumed execution of municipal functions, and from the doing of which injurious consequences result to a private citizen, it is well-nigh iniquitous to deny him redress on the ground that the municipality was not given power to do what it did."

Upon either line of reasoning the only logical conclusion is that highway districts are liable for their torts.

[11] Instruction No. 2 given by the court to the effect that if the district made or caused to be made an excavation across the public highway and placed rocks along the side of it in such a manner as to be dangerous to automobile travel and had not maintained warning signs to give reasonable warning, the district would be liable and that if the defendant Dasenbrock (who evidently was in effect the Director of Highways of the district), by his affirmative act created such dangerous place without proper signs, etc., that he would be liable was in effect, when considered with the other instructions in the case, correct.

. [12] Instruction No. 3, as follows:

"I instruct you that negligence is a failure to perform some act or do some thing which a reasonably prudent person under like circumstances would do or perform, and in determining whether the parties in this case have been guilty of negligence, you will determine whether they have done any act or failed to do any act or thing which a reasonably prudent person under the same circumstances and conditions would do or perform,"

—was likewise correct.

[13] Instruction No. 4 stating that what would be reasonable warning, signs, signals, etc., was a question of fact for the jury, the jury to take into consideration the place at which the danger existed, the nature of the road and the general situation and circumstances surrounding the place, etc., correctly advised the jury as to their duty in this respect.

[14] Instruction No. 5 was likewise correct in instructing the jury that they should take into consideration the kind of travel on the road and the speed at which vehicles would probably travel on the road and that reasonable care and diligence were relative terms to be determined by the character of the thing dealt with.

[15] Instruction No. 6 was as follows:

"I further instruct you that a person traveling over a public highway commonly used by travelers by automobiles

and constructed and used for that purpose, has a right to assume that the road is in reasonably safe condition, and particularly that the highway district and its officers and agents have not committed or done any positive or affirmative act in the way of placing any dangerous obstruction or excavation in the road and left the same unguarded and unprotected. And unless the operator of an automobile has some reasonable warning or notice of danger ahead, it is not negligence on his part to drive at any rate of speed within the limits of the statute prescribing the speed for automobiles, to wit; thirty miles per hour.''

The first part thereof that the driver has the right to assume that a road is in a reasonably safe condition was not incorrect. (13 R. C. L., sec. 386; 29 C. J., sec. 461, p. 699; *Straight Creek Fuel Co. v. Mullins,* 189 Ky. 661, 225 S. W. 726; *Carpenter v. Bloomingdale Tp.,* 227 Mich. 355, 198 N. W. 912; *Philadelphia & R. Ry. Co. v. Dillon* (Del.) 247, 15 A. L. R. 894, 114 Atl. 62; *Dixon v. Johnson,* 27 Ga. App. 228, 109 S. E. 519; *Raymond v. Sauk County,* 167 Wis. 125, 166 N. W. 29, L. R. A. 1918F, 425; *Smith v. Zimmer,* 45 Mont. 282, 125 Pac. 420; *Gigoux v. Yamhill County,* 73 Or. 212, 144 Pac. 437; *Daniels v. County Court,* 69 W. Va. 676, 72 S. E. 782, 37 L. R. A., N. S., 1158.)

[16]   There are no allegations in the answer setting up contributory negligence which charged the plaintiff with driving in a negligent or careless manner, excepting that he was driving at an excessive rate of speed and did not look ahead, which two points were covered by the instruction. In the phrase ''and unless the operator of an automobile has some reasonable warning or notice of danger ahead,'' the words ''danger ahead'' certainly meant every danger which might be ahead of the car; furthermore there was no proof of any negligence on the part of the plaintiffs of any kind, excepting it might be urged that their rate of speed which was stated to be between 25 and 30 miles, was excessive. Therefore the authorities such as Berry on Automobiles, see. 170, and cases cited, cited by appellants to the effect

that one may be negligent in operating an automobile at an excessive speed are not in point.

[17] An instruction responsive to the allegations and evidence is not incorrect.   (14 R. C. L., sec. 37, p. 769.)

Since a nonsuit was granted in favor of the three commissioners it is unnecessary to discuss the court's act in denying an offer of proof bearing upon their diligence in employing competent workmen.

[18] Highway officers as well as other public officers are in general liable for injury in consequence of their malfeasance or nonfeasance in the performance of ministerial duties.

" 'Highway officers charged with the performance of a ministerial duty' says a text-writer, 'are, in general, liable for negligently performing it to one to whom the duty is owing and upon whom they inflict a special injury.' Elliott Roads and Streets, 2d ed., sec. 674. Any person to whom such obligation is due and who sustains a special injury in consequence of the malfeasance or nonfeasance of public officers in the performance of purely ministerial duties may obtain redress against such officer or officers by a private action adapted to the nature of the case. Cooley, Torts, 3d ed., 757; Mechem's Pub. Off., sec. 664; Throop Pub. Off., sec. 707; Sherman Redfield, Neg., 3d ed., sec. 168; *Adsit v. Brady,* 4 Hill (N. Y.), 630, 40 Am. Dec. 305; *County Commissioners v. Duckett,* 20 Md. 468, 83 Am. Dec. 557; *Robinson v. Chamberlain,* 34 N. Y. 389, 90 Am. Dec. 713; *Robinson v. Rohr,* 73 Wis. 436, 9 Am. St. 810, 40 N. W. 668, 2 L. R. A. 366; *Hover v. Barkhoff,* 44 N. Y. 113; *Bennett v. Whitney,* 94 N. Y. 302." (*Batdorff v. Oregon City,* 53 Or. 402, 18 Ann. Cas. 287, 100 Pac. 937; *Mott v. Hull,* 51 Okl. 602, 152 Pac. 92, L. R. A. 1916B, 1184; *Doeg v. Cook,* 126 Cal. 213, 77 Am. St. 171, 58 Pac. 707; *Taylor v. Munson,* 9 Cal. App. 382, 99 Pac. 413; note to 83 Am. Dec. 557.)

[19] The rule of *respondeat superior* does not apply where public officers are sought to be bound by the negligence of subordinate officers or employees, unless there has been a failure to exercise due care in the selection of such

subordinates or the officers have knowledge of the negligent acts of the inferior officers. In other words, their liability or nonliability rests upon their knowledge or lack of knowledge of the negligence of their employees or inferior officers who are actually performing the work and whether or not they have used due care in selecting competent employees for the work.

In *Doeg v. Cook, supra,* it appeared that the trustees had actual knowledge of the dangerous condition of the highway and because of such knowledge they were held liable, the court saying:

"It is proper to join as defendants in an action for damages for injury resulting from a defective highway the town marshal, his bondsmen, and the board of town trustees, when the injury resulted from the separate, but concurrent, negligence of the marshal and trustees."

Recognizing the rule in *Doeg v. Cook, supra, Dobbins v. City of Arcadia,* 44 Cal. App. 181, 186 Pac. 190, absolved the trustees from liability, saying:

"The facts there involved (*Doeg v. Cook, supra*) differ from these, in that in the instant case the court finds that defendants, trustees, did not nor did any of them, have any actual notice that said trench was left unguarded and without warning lights or signals."

*Baisley v. Henry,* 55 Cal. App. 760, 204 Pac. 399, holding trustees of city liable for negligent acts of a policeman appointed by the city marshal recognizes this doctrine:

"An application of this principle is found in the rule uniformly recognized, that a public officer is not personally liable for the negligence of an inferior officer unless he, having the power of appointment, has failed to use ordinary care in the selection. *Brown v. West,* 75 N. H. 463, 76 Atl. 169; *Dobbins v. City of Arcadia,* 44 Cal. App. 181, 186 Pac. 190." (*Whiteman v. Anderson-Cottonwood Irr. Dist.,* 60 Cal. App. 234, 212 Pac. 706; *Ham v. Los Angeles County,* 46 Cal. App. 148, 189 Pac. 463; *Litch v. White,* 160 Cal. 497, 117 Pac. 515; *Butler v. Ashworth,* 102 Cal. 663, 36 Pac. 922.)

[20] Whether or not the act in question was discretionary or whether the district had funds to perform the work does not arise in this case for the reason that the work had already been commenced and was being performed at the time the accident happened. It is not alleged that the commissioners of the district had failed to exercise due care in securing a competent man as Director of Highways and there is no evidence that they had actual knowledge of the negligent manner in which the work was being performed or that they participated in such work. The court, therefore, did not err in granting a nonsuit in their favor.

It is urged that Dasenbrock was the party responsible for the negligence, if any, and that he was an independent officer. The rule thus contended for appears in *Altvater v. Mayor and City Council of Baltimore*, 31 Md. 462:

"It is but just that responsibility for the proper discharge of duty should result from the power to perform the duty, and if a party is to be held responsible for the conduct of another party charged with the performance of duty, over whom he can exercise no control, some law creating such responsibility ought to be shown." (*Dupuis v. City of Fall River*, 223 Mass. 73, 111 N. E. 706.)

Again in *Donohue v. City of Newburyport*, 211 Mass. 561, Ann. Cas. 1913B, 742, 98 N. E. 1081:

" . . . . The tree warden performs only duties established by statute according to the discretion reposed in him, and not according to the direction of city officials. He is, therefore, a public officer, and not a servant or agent of the city. . . . . "

In *Seivers v. City and County of San Francisco*, 115 Cal. 648, 56 Am. St. 153, 47 Pac. 687, it is emphasized that a duty is imposed upon the officer by express law and not by order of the municipality, concluding, therefore, that the municipality was relieved from liability. The converse of this would be that if the order had been given by the municipality, which of course can act only through the board of commissioners, that the officer would have been acting for the municipality and not as an independent officer. Bearing this proposition in mind, turning to the answer we find it

alleged in the second and separate defense under paragraph 8:

"That before the happening of any of the events mentioned in plaintiff's complaint and on or about the month of June, 1922, that certain highway mentioned and described in plaintiff's complaint was in a condition deemed unsafe for travel by the said Board of Highway Commissioners in that the plank covering of that certain culvert mentioned in plaintiff's complaint had become decayed and broken and that certain other repairs were deemed necessary to said highway by said Board of Commissioners, and that the said Board of Commissioners acting officially in the capacity aforesaid and not otherwise authorized and directed the defendant, Ed. Dasenbrock, to remove said wooden culvert and to install in its place a culvert to be constructed of rock and concrete. . . . .

"That on or about the 27th day of June, 1922, the defendant, Ed. Dasenbrock, acting as an employee, foreman and superintendent of the defendant Highway District, and by authority of the said commissioners of said highway district so regularly and officially given to him and authorizing the work and improvements, removed the said defective wooden culvert and began excavation across the said highway for the purpose of installing and constructing the said concrete culvert."

"Defendants further allege: That the installation of said culvert was proper and necessary repair upon said highway; that the same was done lawfully and by authority of the said highway district; and its officers; . . . . "

The defendants thus specifically alleged that Dasenbrock was an officer of the Highway District and that the Highway District was to do the work and it would seem therefore that the authorities referred to are beside the point. (28 Cyc., secs. 1382, 1366, 1365, and 1355, are more clearly in point than 28 Cyc. 71, which is the basis of the above contention. See, also, note 63 following note 61, 28 Cyc. 71.)

[21] With reference to instruction No. 4, which is upon reasonable care and diligence, the same was expressly put

in issue by the last quoted portion of the answer, and when read in connection with instructions Nos. 1, 2, 3 and 4 was correct. Certainly the district was under the duty of giving reasonable warning to the public and the last paragraph of instruction No. 4 expressly leaves to the jury whether the plank alone or the pile of rocks was sufficient warning.

[22] Appellants do not assign the instruction telling the jury they might find against one defendant and in favor of the other as error and simply urge that the verdict and judgment in favor of Dasenbrock should stand, but do urge that the verdict against the district should be set aside as inconsistent therewith. On the other hand, respondents and cross-appellants ask that the verdict against Dasenbrock be set aside because contrary to the evidence.

In *Texas & P. Ry. Co. v. Huber* (Tex. Civ. App.), 95 S. W. 568, the court stated very sane reasons why a verdict in favor of the employee should not vitiate a verdict against the master, and said:

"We also overrule the tenth assignment, which contends that a motion in arrest of judgment ought to have been sustained because the verdict in favor of Oliphant was a finding that he was free from negligence, and, he being the agency through which the railway company committed the negligence, if any was committed, the verdict against this appellant was unfounded. The question was considered in *Gulf C. & S. F. Ry. v. James,* 73 Tex. 12, 15 Am. St. 743, 10 S. W. 744, where it was held, in a case of similar character, that, although such a verdict has the appearance of being based on inconsistent and contradictory findings of the jury, this is not of itself enough to require the reversal of a judgment against the passive defendant; the reason being that the finding in favor of the defendant whose act constitutes the negligence complained of, and the finding against the other in the same case by the same jury, can be attributed to improper conduct of the jury in arbitrarily exonerating the former and not necessarily finding that there was no negligence on his part. It has often been held that, where the servant or agent who was the real and active

wrongdoer has been sued and a judgment has been rendered in his favor, it will be a bar to a judgment against the employer or principal. This rule is not deemed to be applicable where the verdict in favor of the agent or the servant nevertheless bears intrinsic evidence that the jury found that the wrongful act complained of had been committed by the agent or servant. The finding against appellant indicates this.''

In the case of *Whitesell v. Joplin & P. Ry. Co. et al.*, 115 Kan. 53, 222 Pac. 133, the supreme court of Kansas said:

''It must be conceded that the collision was the proximate cause of the injury, and that the crowded condition of the car contributed thereto by compelling the plaintiff to stand in the vestibule of the car, where he was struck by the controller box of the car on which he was riding. Although there was no verdict against the motorman, it is not seen how it can be successfully contended that he was not guilty of negligence in running his car into the car on which the plaintiff was riding. If the company had been sued alone the jury would have been warranted in finding the company guilty of negligence, and in returning a verdict in favor of the plaintiff on that finding. The fact that the jury failed to return a verdict as to the defendant motorman is no reason why a verdict against the company, based on a finding of the jury that the motorman was guilty of negligence, should not stand. The failure of the jury to return a verdict against the motorman cannot be used as a reason for setting aside the judgment rendered against the railroad company. This conclusion is supported by *Chesapeake & O. Ry. Co. v. Dawson, Admr.*, 159 Ky. 296, 167 S. W. 125; *Illinois Central Ry. Co. v. Murphey's Admr.*, 123 Ky. 787, 97 S. W. 729, 30 Ky. Law. Rep. 93, 11 L. R. A., N. S., 352; *Clay v. Chicago, Milwaukee & St. Paul Ry. Co.*, 104 Minn. 1, 115 N. W. 949; *Molzer v. Raven Copper Co.*, 47 Mont. 351, 132 Pac. 552; *Texas & P. Ry. Co. v. Huber* (Tex. Civ. App.), 95 S. W. 568.''

In the case of *Illinois Cent. R. Co. v. Murphey's Admr.,* 123 Ky. 787, 97 S. W. 729, 11 L. R. A., N. S., 352, the supreme court of Kentucky held:

"It is argued that the jury, through some prejudice against the corporation, refused to obey the court's instructions, and from this circumstance it is claimed that the verdict is unsupported by the evidence, because, if there was not enough evidence to justify the jury in their own opinion to find a verdict against the engineer of necessity, there was also a lack of evidence to justify a verdict against his principal, who could be held responsible only upon his negligence. Whether a verdict is flagrantly against the evidence is a matter that this court will determine for itself, without regard to what the jury may have thought. We think there was evidence of actionable negligence proven against the company, and that on the showing of its own witnesses."

To the same effect see the following cases: *Broadway Coal Mining Co. v. Robinson,* 150 Ky. 707, 150 S. W. 1000; *J. I. Case Threshing Mach. Co. et al. v. Hayes,* 178 Ky. 644, 199 S. W. 786; *Chesapeake & O. Ry. Co. v. Dawson, Admr.,* 159 Ky. 296, 167 S. W. 125; *Morris v. Salt Lake City,* 35 Utah, 474, 101 Pac. 373.

The foregoing rule was also affirmed in the more recent case of *Buskirk et al. v. Caudill,* 181 Ky. 45, 203 S. W. 864.

[23] The verdict of a jury can only be set aside on appeal for want of substantial evidence to support that particular verdict, and not because the verdict may seem inconsistent with another verdict, or because another verdict is wrong, or some other party has been discharged or exonerated. It would be a subversion of the ends of justice to allow a defendant to complain of a just judgment against it,—one supported by the overwhelming weight of evidence,—because its joint tort-feasor was not also held. Again, if it be contended by appellant that the verdicts are inconsistent and one of them is therefore capricious or the result of prejudice, what more reason is there for believing that the caprice or prejudice was directed against the appellant than to suppose

that it was directed in favor of Dasenbrock and against respondent?

The evidence is amply sufficient to sustain the verdict and the judgment is therefore affirmed and it is so ordered. Costs awarded to respondents on the appeal of the highway district, and in favor of the highway district on the cross-appeal by respondents and cross-appellants.

William A. Lee, C. J., and Budge, J., concur.

Wm. E. Lee, and Taylor, JJ., dissent.